**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

---

|  |  |  |
|---|---|---|
| MARIANN LORD, | : | |
| | : | |
| Plaintiff, | : | Civil No. 21-08646 (RBK/SAK) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ACCENTURE LLP, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

---

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant Accenture LLP's ("Defendant")

Motion to Transfer to the United States District Court for the Southern District of New York

pursuant to 28 U.S.C. § 1404(a). (ECF No. 7). The reasons set forth in the Opinion below,

Defendant's Motion is **GRANTED**.

## I.    BACKGROUND

### a.  Factual Background

Defendant Accenture LLP ("Defendant" or "Accenture") is a limited liability partnership

that maintains a principal place of business in Chicago, Illinois. (ECF No. 1, Compl. ¶ 3).

Plaintiff Mariann Lord ("Plaintiff") is a citizen of the State of New Jersey and resides in Ocean

City, New Jersey. (*Id.* ¶ 1).

Defendant Accenture hired Plaintiff Lord in August 2007. (*Id.* ¶ 16). On November 25,

2012, Plaintiff signed an Employment Agreement pursuant to her employment with Defendant.

(ECF No. 7-3, "Employment Agreement"). Section 13 of the Employment Agreement—under

the heading "Dispute Resolution"—provides, in relevant part:

> 13(b) Subject to subsections (d) through (f), any and all disputes which cannot be settled amicably, including any claims of any party, arising out of, relating to or in connection with the validity, negotiation, execution, interpretation, performance, nonperformance of the Agreement (including without limitation the validity, scope and enforceability of this arbitration provision), . . . employment and employment termination claims and claims by you for employment discrimination, harassment, retaliation, wrongful termination, or violations under . . . the Age Discrimination in Employment Act, . . . or under any other federal, state, foreign or local law, regulation, ordinance, executive order, constitution, or common law doctrine related to employment or otherwise . . . (each a "Dispute") shall be finally settled by arbitration conducted by a single arbitrator in New York (or at such other place of arbitration as the parties may agree) in accordance with the then-existing Rules of Arbitration of the International Chamber of Commerce ("ICC")…

*Id.* The rest of the Dispute Resolution section provides:

> 13(d) Either party may bring an action or proceeding in any court of law for the purpose of compelling a party to arbitrate, … and, for the purposes of this subsection (d), each party expressly consents to the application of subsections (e) and (f) to any such suit, action or proceeding.

> 13(e) Judgment on any award(s) rendered by the tribunal may be entered in any court having jurisdiction thereof.

> 13(f) The parties agree as follows:
> (i) Each party hereby irrevocably submits to the exclusive jurisdiction of the Courts located in New York, United States for the purpose of any suit, action or proceeding brought in accordance with the provisions of subsections (d) or (e). The parties acknowledge that the forum designated by this subsection (f) has a reasonable relation to this Agreement, and to the parties' relationship with one another.
> (ii) The parties hereby waive, to the fullest extent permitted by applicable law, any objection which they now or hereafter may have to personal jurisdiction or to the laying of venue of any suit, action or proceeding brought in any court referred to in subsection (f)(i) pursuant to subsections (d) or (e) and such parties agree not to plead or claim the same.

*Id.* The Employment Agreement also contains a choice of law provision, 15(d), that states:

"[t]his Agreement and its incorporated documents shall be governed by and construed in accordance with the law of the State of New York without regard to principles of conflict of laws."

(Employment Agreement 15(d)).

Defendant terminated Plaintiff on July 23, 2020. (Compl.) At that time, Plaintiff was 64 years old and had worked for Accenture for 13 years. (*Id.*). As of the date of her termination, Plaintiff held the title of Managing Director, Business Process Outsourcing Sales Capture Lead. (*Id.* ¶ 17). Plaintiff alleges that her age "was a motivating and determinative factor in Defendant's decision to terminate" her employment. (*Id.* ¶ 52).

### b. Procedural History

On April 8, 2021, Plaintiff brought this suit against Defendant alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1, *et seq.*, on April 8, 2021. (ECF No. 1). On May 13, 2021, Defendant filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), (ECF No. 7, "Def. Transfer Mot."), and a supporting memorandum of law, (ECF No. 7-1, "Def. Transfer Mem."). On May 25, 2021, Plaintiff submitted a memorandum of law opposing Defendant's motion to transfer. (ECF No. 8, "Pl. Opp'n Mem."). Defendant replied to Plaintiff's opposition memorandum on June 11, 2021. (ECF No. 11, "Def. Reply").

## II.   DISCUSSION

Defendant asserts that Plaintiff's allegations fall within the scope of the Employment Agreement's mandatory arbitration provision and that transfer to a New York forum is required so that Defendant can move to compel arbitration in this matter. (Def. Transfer Mem. 1, 8). Plaintiff does not dispute that her claims fall within the scope of the arbitration provision. (Pl. Opp'n Mem. 2 n.2). Instead, Plaintiff contends that the arbitration provision is unconscionable and therefore unenforceable under Pennsylvania law. (Pl. Opp'n Mem. 10–17). Defendant replies that New York law governs the dispute per the Employment Agreement's choice of law provision, and that the arbitration provision is not unconscionable under New York law. (Def. Reply 6–7, 8–8, 12–13).

We do not believe that it is appropriate for this Court to rule on the enforceability issue.[1] Under the plain terms of the Employment Agreement, this Court cannot entertain motions to compel arbitration or compel arbitration itself, if arbitration is indeed proper in this case. *See* (Employment Agreement 13(b), (d), (f)). Thus, it makes little sense for this Court to determine the issue of unconscionability, only to then potentially transfer the matter to a New York district court whose hands would be tied by our decision. This is particularly true given New York law governs the Employment Agreement pursuant to the contractual choice of law provision. *See* (Employment Agreement 15(d)) ("This Agreement and its incorporated documents shall be governed by and construed in accordance with the law of the State of New York without regard to principles of conflict of laws.").

Moreover, we need not determine the enforceability issue to rule on the instant motion to transfer. The Court will proceed to determine whether transfer to the Southern District of New York is proper under § 1404(a), without regard to the challenged portion of the Employment Agreement, section 13(b).[2]

### a. Motion to Transfer

#### i. Venue

---

[1] Even if the Court were inclined to engage with Plaintiff's unconscionability argument at this time, it is not clear that we have the authority to do so. The arbitration provision at issue appears to contain a delegation clause that gives the arbitrator sole authority over challenges regarding the arbitration provision's enforceability. *See* (Employment Agreement 13(b)) (providing that the parties agree to arbitrate "any and all disputes which cannot be settled amicably … arising out of, or relating to or in connection with the validity ... of the Agreement (*including without limitation the validity, scope, and enforceability of this arbitration provision*)") (emphasis added); *cf. Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). As the parties have not briefed this issue, we will not address it further.

[2] Plaintiff does not clearly define the purportedly unconscionable "arbitration provision" in her opposition memorandum. When first referencing the Employment Agreement's "arbitration provision," however, she cites only to Section 13(b). (Pl. Opp'n Mem. 1). Further, in a footnote, Plaintiff seems to distinguish between the "arbitration provision," which she notes contains a forum selection clause, and section 13(f)(i) of the Employment Agreement, which provides New York courts exclusive jurisdiction over motions to compel arbitration. (Pl. Opp'n Mem. 1 n.1). As such, the Court determines that Plaintiff's unconscionability argument is focused on section 13(b) only, rather than the entire "Dispute Resolution" section. The Court will therefore consider the remaining portions of section 13 when rendering its decision on the pending transfer motion.

As an initial matter, the Court must determine whether venue is proper in the Southern District of New York. In a federal civil case, venue is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For venue purposes, a corporate defendant resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" *Id.* at § 1391(c)(2). In states with multiple judicial districts, a corporation "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State[.]" *Id.* at § 1391(d).

We do not agree with Plaintiff's contention that there is "no legitimate basis for venue in New York." (Pl. Opp'n Mem. 8). The Court takes judicial notice of the fact that Defendant has two offices located in New York, New York, *Find an Accenture Office*, Accenture, https://www.accenture.com/us-en/about/locations/office-details?loc=New%20York (last accessed Dec. 15, 2021), and is thus subject to personal jurisdiction there per § 1391(c)(2), (d) such that venue is proper in the Southern District of New York pursuant to § 1391(b)(1), *see* 28 U.S.C. § 112(b); *see also Cigna Corp. v. Celgene Corp.*, No. CV 21-90-KSM, 2021 WL 2072210, at *5 (E.D. Pa. May 24, 2021) ("[T]he Court finds that venue is proper in the District of New Jersey as the Court takes judicial notice of the fact that [defendant] maintains at least five facilities in New Jersey, and these facilities house [defendant]'s finance, legal, and accounting

departments. These activities are sufficient indicators that [defendant] may be found in and transacts business in the District of New Jersey.").

Further, "'venue is primarily a matter of choosing a convenient forum,' and not of competence to hear a dispute…[a]s such, parties can agree to venue among themselves[.]" *Wall St. Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 87 (3d Cir. 2006) (quoting *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006)). As such, "[w]here a [a party] has waived its objection to venue, the Court may hear the matter, even though venue would not otherwise be proper under section 1391." *Park Inn Int'l, L.L.C. v. Mody Enterprises, Inc.*, 105 F. Supp. 2d 370, 375 (D.N.J. 2000). Pursuant to sections 13(d) and 13(f)(i) of the Employment Agreement, the parties have agreed to the "exclusive jurisdiction of the Courts in New York" for the purpose of an action brought to compel a party to arbitrate under the terms of the Employment Agreement. Section 13(f)(ii), read in conjunction with sections 13(d) and 13(f)(i), states that the parties "hereby waive…any objection…to personal jurisdiction or the laying of venue" in a New York court with respect to an action brought to compel arbitration.[3] Here, Defendant brings the instant motion to transfer so that it may move to compel Plaintiff to arbitrate before a New York court. (Def. Transfer Mem. 1, 8). As we understand it, Defendant cannot bring a motion to compel arbitration in New Jersey, as the terms of the Employment Agreement give New York courts sole jurisdiction over such actions. (Employment Agreement 13(d), (f)). Accordingly, the Court finds that Plaintiff has consented to venue in, and the "exclusive jurisdiction" of, the "Courts in New York" for the purpose of a motion to compel arbitration.

### ii.   Transfer

---

[3] As noted above, Plaintiff launches no attack on the validity or enforceability of these portions of section 13.

As venue could have been properly laid in the Southern District of New York, the Court turns to the question of whether transfer is appropriate under § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought…." 28 U.S.C. § 1404(a). The parties do not contest that venue is proper in the District of New Jersey. *See* (Pl. Opp'n Mem. 7); (Def. Transfer Mem. 1, 8) (requesting transfer pursuant to § 1404(a)).

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation and quotation marks omitted). Indeed, "[t]he purpose of transferring venue under § 1404(a) 'is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Bensalem Lodging Assocs., LLC v. Holiday Hosp. Franchising, LLC*, No. CV 21-2882, --- F. Supp. 3d ----, 2021 WL 5882113, at *2 (E.D. Pa. Dec. 10, 2021) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). "In determining whether a transfer is appropriate, 'the district court is vested with a wide discretion.'" *Id.* (quoting *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973)).

The text of § 1404(a) instructs courts to consider: (1) the convenience of the parties; (2) convenience of the witnesses; and (3) the interests of justice. *See* 28 U.S.C. § 1404(a). The Third Circuit has also articulated a range of public and private interests for courts to consider when deciding if transfer is proper under § 1404(a). *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). The private interest factors include:

> (1) [P]laintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may

actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* at 879 (citations omitted). The public interest factors include:

(1) [T]he enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citations omitted). The "[p]rivate interests … relate to 'the convenience of the parties and witnesses'" while the "public interests … are not necessarily tied to the parties, but instead derive from 'the interest of justice.'" *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017) (quoting 28 U.S.C. § 1404(a)). "The burden of establishing the need for transfer … rests with the movant." *Jumara*, 55 F.3d at 879.

## 1. Private Interest Factors

Here, the first private interest factor weighs in favor of a New Jersey forum. Plaintiff's choice of a New Jersey forum—her home forum—"should not be lightly disturbed[,]" but is also not dispositive in a § 1404(a) analysis. *Yocham v. Novartis Pharms. Corp.*, 565 F. Supp. 2d 554, 558 (D.N.J. 2008) (quoting *Jumara*, 55 F.3d at 879). Defendant's preference, as its transfer motion makes clear, is for a New York forum. (Def. Transfer Mem.).[4]

Regarding the convenience of the parties, we cannot conclude that either party would be meaningfully inconvenienced by transfer to the Southern District of New York. Plaintiff asserts that her home is roughly 61 miles from Camden, New Jersey and 131 miles from New York,

---

[4] It is unclear based on the facts before the Court precisely where the claims in this case arose. The Employment Agreement governing Plaintiff's employment with Defendant was signed in 2012 while Plaintiff worked out of Defendant's Philadelphia, PA office. (Pl. Opp'n Mem. 7). Further, Plaintiff alleges that she worked out of her home in New Jersey for a few months starting in March 2020 up until the time of her termination in July 2020. (Pl. Opp'n Mem. 6). Plaintiff does not, however, allege that she was ever hired or worked out of Defendant's New Jersey office. Given this uncertainty, the Court is unable to determine the weight of this factor.

New York.[5] (Pl. Opp'n Mem. 6). While Plaintiff concludes that, as such, a New Jersey forum is "significantly more convenient[,]" we do not agree. The practical impact of the difference in distance between New York and Camden is minimal; both cities are within an easy driving distance of Ocean City.[6] Plaintiff makes no assertion that New York is inconvenient, only that New Jersey is slightly more convenient. (Pl. Opp'n Mem. 7). As such, we find that the fourth private interest factor weighs only slightly against transfer. The fifth and sixth factors are neutral—there is no evidence that any relevant witnesses, books, or records would be unavailable in New York. In sum, the private interest factors weigh against transfer.

### 2. Public Interest Factors

However, the public interest factors militate strongly in favor of transfer to a New York district court. Practical considerations, including judicial economy, weigh heavily in favor of transfer to a district court in the Southern District of New York. It is simpler, by far, to have a New York district court decide the threshold unconscionability issue, as that same court may then, if proper, adjudicate the rest of this case or compel arbitration in this matter. The terms of the Employment Agreement specify that for proceedings brought to compel arbitration, enforce an arbitration award, or enter an arbitral judgment, the parties have agreed to submit to the exclusive jurisdiction of New York courts. (Employment Agreement 13(d), (e), (f)).[7] Further, if this Court were to entertain Plaintiff's argument regarding the enforceability of the arbitration

---

[5] The U.S. District Court for the Southern District of New York is comprised of four courthouses. United States District Court for the Southern District of New York, Courthouses, https://www.nysd.uscourts.gov/courthouses (last accessed Dec. 15, 2021). We take judicial notice of the fact that two of the four courthouses are located in New York, New York. *Id.*

[6] According to Google Maps (www.google.com/maps), the driving distance from Ocean City, New Jersey is about 61 miles to Camden, New Jersey and 129 miles to New York, New York. *See Access 4 All, Inc. v. Boardwalk Regency Corp.*, No. CIV.A. 08-3817 RMB, 2010 WL 4860565, at *6 (D.N.J. Nov. 23, 2010) (taking judicial notice of geographical distance using Google Maps); *Hartford Life Ins. Co. v. Rosenfeld*, No. CIV.A. 05-5542, 2007 WL 2226014, at *8 (D.N.J. Aug. 1, 2007) (same).

[7] This is not to say that arbitration is necessarily proper in this case, as we have not decided whether the arbitration clause is enforceable.

provision, and decide against Plaintiff, we would then be required to transfer the matter to New York pursuant to the arbitral forum selection clause anyway. (Pl. Opp'n Mem. 2 n.2) (conceding that her claims in the instant suit fall within the scope of the arbitration provision); (Employment Agreement 13(b)). Further, the Employment Agreement contains a choice of law clause that mandates New York law govern the Agreement. (Employment Agreement 15(d)). As New York law will thus apply to the question of the arbitration provision's unconscionability—if indeed a district court may resolve this question—we find that a New York district court judge is in a better position to decide this critical threshold issue. Considering the terms of the Employment Agreement and the procedural quirks in this case, we conclude that is it preferable to have a New York district court adjudicate this case in its entirety. Thus, practical considerations substantially favor transfer.

The additional public interest factors are largely neutral.[8] The only real interest that New Jersey has in this dispute is that fact that Plaintiff is a resident of New Jersey, who happened to work out of her home for several months in 2020 when she was employed by Defendant. (Pl. Opp'n Mem. 6). This interest is not particularly significant. *Cf. Cohan v. Acme Lift Co. L.L.C.*, No. CV 20-11075, 2021 WL 1625098, at *6 (D.N.J. Apr. 27, 2021) ("[W]hile New Jersey might have an interest in deciding this case on behalf of a citizen, [this case] is a private dispute between sophisticated parties and not a matter of overwhelming public policy or interest."). Plaintiff does not allege she was ever employed by or worked out of Defendant's New Jersey offices.[9] In fact, Plaintiff was working out of Defendant's offices in Philadelphia at the time the

---

[8] The enforcement and public policy factors are not instructive here. The parties do not mention the disparity in court congestion between district courts in the District of New Jersey and the Southern District of New York, so the court does not consider this factor.

[9] Plaintiff alleges that Defendant has two New Jersey offices. (Pl. Opp'n Mem. 7). But as noted above, none of the operative facts in this lawsuit appear to stem from Defendant's New Jersey offices.

parties entered into the operative Employment Agreement, meaning, if anything, Pennsylvania likely has a local interest in this dispute. (Pl. Opp'n Mem. 7, 10–11). At the same time, New York has only a minor local interest in this matter, at best, based on the fact that Defendant maintains offices in New York, *see Find an Accenture Office*, *supra*, and the Employment Agreement specifies that New York law will govern the contract, (Employment Agreement 15(d)). We do not find that local state interests tip the balance much here.

And last, though this is not a diversity case, Plaintiff does assert a New Jersey state law claim under the NJLAD. However, we find that a district judge in the Southern District of New York is eminently capable of deciding Plaintiff's supplemental state law claim. *Accord Cohan*, 2021 WL 1625098, at *6 (concluding that "a district judge in Arizona is more than capable of deciding questions of state law" including the plaintiff's NJLAD claim); *Evans v. Cath. Relief Servs.*, No. 218CV13537, 2019 WL 2417511, at *6 (D.N.J. June 10, 2019), reconsideration denied, No. 218CV13537, 2020 WL 468336 (D.N.J. Jan. 29, 2020) ("The Court does not foresee that NJLAD's statutory scheme or legislative history … are beyond the ken of a Maryland court."). Therefore, this last factor is also neutral. On balance, we find that the public interest factors weigh heavily in favor transfer.

The Court will briefly touch on the factors outlined in the text of § 1404(a)—namely, the interest of justice and the convenience of parties and witnesses. We cannot conclude that any party or witness would be meaningfully inconvenienced if this Court were to transfer the instant matter to a district court in the Southern District of New York for the reasons stated above. Most importantly, as our public interest analysis reveals, it is in the clear interest of justice for the Court to transfer this case to the U.S. District Court for the Southern District of New York.

"[B]ecause the 'determination of how much weight each factor should be given in the transfer analysis is [itself] discretionary,' courts have implicit authority under *Jumara* to disregard a plaintiff's chosen forum if 'all relevant factors' indicate that 'on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Kalawa v. United States*, No. 19-CV-16089, 2020 WL 3603205, at \*4 (D.N.J. July 2, 2020) (citations omitted). Plaintiff's preference for a New Jersey forum is outweighed by the substantial practical and efficiency considerations that counsel in favor of transfer here. Pursuant to our broad discretion under § 1404(a), this Court concludes that the transfer of this case to the U.S. District Court for the Southern District of New York is warranted.

## III.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Transfer Venue to the U.S. District Court for the Southern District of New York (ECF No. 7) is **GRANTED.** This case shall be **TRANSFERRED** to the United States District Court for the Southern District of New York pursuant to this Court's authority under 28 U.S.C. § 1404(a). An Order shall issue.

Date:   __12/16/2021__                                    _/s/ Robert B. Kugler_____
                                                            ROBERT B. KUGLER
                                                            United States District Judge